**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JAMES D. MURRAY, III,

Plaintiff,

-vs-

C.O. CHARLES JACOBS, MICHAEL MARLARK,
ROSEMARY MATIAS, P. CORCORAN,
DANIEL J. VICTOR, JOSEPH S. ORLOWSKI,
JOHN CORTRIGHT, RICHARD BENOIT,
MARK KOZLOWSKI, P. RRAOI,
JAMES L. KENNEDY, ROBERT J. MURPHY,       04-CV-6231-CJS
DAVID PIRRAMI, and JOHN and JANE DOES

                                          DECISION and
                              Defendants.        ORDER

## INTRODUCTION

Plaintiff, appearing pro se, is a former inmate in the New York State Department of

Correctional Services ("DOCS") at Attica Correctional Facility ("Attica"). He brought suit

under 42 U.S.C. § 1983, alleging the following violations: (1) excessive use of force by

prison officials; (2) failure by prison officials to protect him from such force; (3) due

process violations relating to a subsequent Tier III hearing; and (4) cruel and unusual

punishment stemming from cell conditions. Now before the Court is Defendants' partial

motion for summary judgment on the third and fourth claims. (Doc. No. 69.) For the

reasons stated below, Defendants' motion is granted.

## BACKGROUND

On March 26, 2003, Plaintiff was involved in an altercation with corrections

officers. (Compl. at 9.) Following this altercation, a misbehavior report was issued against

Plaintiff, alleging violent conduct, assault on staff, refusing direct orders, and refusing a search or frisk. (*Id.* at 22.)

On April 1, 2003, Defendant Hearing Officer James L. Kennedy ("Kennedy") began a Tier III hearing in connection with the incident, and he concluded it on April 23, 2003. (*Id.*) During the hearing, Kennedy considered the following: "Inmate Misbehavior Report of C.O. Victor; Unusual Incident Report; Use of Force Report; Memo of Sgt. Matias to Lt. Polak dated 3/26/03; Memo of C.O. Orlowski to Supt. Conway dated 3/26/03; Testimony of Sgt. Matias, C.O. Victor, C.O. Braton, Lt. Polak, and Inmate Roberts." (*Id.* at 23.) On the basis of this evidence, Kennedy found Plaintiff guilty on charges of violating the following: "Rule 104.11, Violent Conduct, 100.11, Assault on Staff, 106.10, Refusing a Direct Order, and 115.10, Refuse Search or Frisk . . . ." (Hearing Transcript at 131.) Plaintiff was sentenced to sixteen months in the Special Housing Unit ("SHU"),[1] without packages, commissary, or phones, as well as loss of six months' good time. (Compl. at 22.)

Plaintiff appealed Kennedy's decision on the following grounds:

(1) The inmate witness refusal form etc., of inmate Franklin . . . does not provide a reason for alleged refusal and the hearing officer never established the genuinity [sic] of refusal; (2) Inadequate employee assistance; (3) Unjust denials of requested witnesses; (4) Failure to provide witness refusal/denial forms for witnesses alleged to have refused and or denied etc.; (5) Untimeliness; (6) Denial of documentary evidence unjustly; (7) denial of a [sic] impartial and unbiased hearing officer; (8) Denial of right to be present for witness testimony; (9) Denial of right to have witnesses present when giving testimony; (10) Denial of right to have the entire hearing . . . electronically recorded . . . .

(*Id.* at 24.) Commissioner's Hearing Officer James Esgrow ("Esgrow") held a rehearing from May 5, 2003 to June 4, 2003. (Rehearing Transcript at 1 & 186.) After hearing

---

[1] Four months of this sentence were suspended at rehearing by Esgrow. (Rehearing Tr. at 185.) Plaintiff only served twelve months of SHU time. (Compl. at 31.)

witnesses and reviewing the evidence, Esgrow overruled Plaintiff's objections and, with the exception of suspending four months of SHU time, recommended that Kennedy's decision be affirmed. (*Id.* at 185-86.) On June 10, 2003, Defendant Robert J. Murphy ("Murphy"), Acting Director of Special Housing/Inmate Disciplinary Program, reviewed both the hearing and rehearing transcripts, and affirmed Kennedy's April 23, 2003 finding. (Compl. at 25.)

Plaintiff subsequently filed an Article 78[2] judicial proceeding in New York State Supreme Court contesting Kennedy's determination. (*Id.* at 26.) Finding that the Tier III hearing transcript was confusing and possibly incomplete, and therefore insufficient for review, the New York Supreme Court ordered a de novo disciplinary hearing. (*Id.* at 27-28.) However, it is unclear from the record before this Court if the de novo hearing was held.

Plaintiff further alleges that from March 27, 2003 to May 6, 2003, he slept on a bent bed frame with an "unsupportive, ripped, and outdated mattress [which] itched [him]." (*Id.* at 13.) He claims that the condition of his bed, plus the March 26, 2003 altercation, worsened his preexisting back injury, a "herniated/buldging [sic] L4 L5 disc." (*Id.*) Plaintiff filed a grievance regarding his bed frame and mattress, which was denied on April 25, 2003, in a letter stating, "[y]our bedframe and mattress have been determined to be serviceable." (*Id.* at 20.) He was subsequently advised to "address his medical concerns through sick call procedures." (*Id.* at 21.)

---

[2] New York Civil Procedure Law and Rules, Article 78.

# STANDARDS OF LAW

## A. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d

4

Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990).

However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Pursuant to Federal Rule of Civil Procedure 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge,

shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Fernandez v. Callens*, No. 06-CV-0506, 2010 U.S. Dist. LEXIS 115496 (W.D.N.Y. Oct. 29, 2010) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)).

Additionally, when a plaintiff is moving pro se, his pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the pro se plaintiff must still establish the existence of genuine issues of material fact to survive a motion for summary judgment; the pro se party's "bald assertion," when unsupported by evidence, is insufficient. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995).

## B. IRBY Notice

Under *Irby v. New York City Transportation Authority*, 262 F.3d 412 (2d Cir. 2001), the court is obligated to inform a pro se plaintiff that failure to respond to a motion for summary judgment may result in the grant of judgment for the party seeking summary judgment and dismissal of the case. Such notice was provided to Plaintiff in Defendants' Motion for Summary Judgment. (Doc. No. 69.)

## C. 42 U.S.C. § 1983

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, which provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1996). In order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993); *see Missel v. County of Monroe*, 351 Fed.Appx. 543 (2d Cir. Nov. 4, 2009) (citing to *Dwares* to hold that, "[t]he allegations that Hildreth acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient.").

### D. Due Process

To establish a due process violation, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Bd. of Trs. of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir. 1988). A prisoner's liberty interest is implicated by SHU confinement only if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

An inmate must then prove that he was deprived of that liberty interest as a result of insufficient process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). Although an inmate subject to a disciplinary hearing is not entitled to the full panoply of due process rights, there are certain minimum procedural safeguards to which inmates are entitled when disciplinary actions subject them to further liberty deprivations. *See Wolff v. McDonnell*,

418 U.S. 539, 555-56 (1974) (describing rights that must be afforded before revocation of good-time credits). These procedural safeguards are not engraved in stone, *Wolff*, 418 U.S. at 564, but may include, "(1) advance written notice of the charges against him, (2) the opportunity to call witnesses and present documentary evidence in his defense and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action." *Loret v. Selsky*, 595 F. Supp. 2d 231, 233-234 (W.D.N.Y. 2009) (citing *Wolff*, 418 U.S. at 563-67). A prison official may deny these rights if the denial is logically related to preventing "undue hazards to 'institutional safety or correctional goals.'" *Ponte v. Real*, 471 U.S. 491, 495 (1985). Additionally, "[p]rison hearing officers . . . have the discretion to keep hearings within reasonable limits, and included within that discretion is the authority to refuse to call witnesses whose testimony the prison official reasonably regards as duplicative or non-probative." *Eleby v. Selsky*, 682 F. Supp. 2d 289, 291-92 (W.D.N.Y. 2010) (citing *Russell v. Selsky*, 35 F.3d 55, 55-59 (2d Cir. 1994)).

Lastly, where an inmate claims that a finding of guilt was not supported by the evidence, "judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence,'" which is a relatively light evidentiary burden. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). This standard is satisfied if there is any evidence in the record that supports the disciplinary ruling. *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000). Nevertheless, the "some evidence" standard requires some "reliable evidence." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).

**DISCUSSION**

Plaintiff has responded to Defendants' motion for summary judgment by merely resubmitting his complaint, in addition to full transcripts of the Tier III hearing and rehearing, as well as the full transcript of his February 2, 2006 deposition. According to *Irby*, a pro se plaintiff may not rely exclusively on his complaint to survive summary judgment. *Irby,* 262 F.3d at 414. However, a verified complaint may serve as an affidavit for summary judgment purposes, provided that it meets the other requirements for an affidavit under Rule 56(e). *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000). Here, Plaintiff swore under the penalty of perjury that his complaint was "true and correct," elevating the document to a verified complaint. (Compl. at 14.) As the complaint meets the other requirements of Rule 56(e), the Court will consider it as an affidavit for the purposes of summary judgment.

### A. Due Process Claim

### (1) Plaintiff's Liberty Interest

With regard to the threshold issue of whether he has a liberty interest, Plaintiff alleges that he served twelve months of SHU time.[3] (Compl. at 31.) "[C]onfinement in normal SHU conditions for 305 days is sufficient . . . to require procedural protections under *Sandin* . . . . The longest confinement in normal SHU conditions that we have ruled was not shown to meet the *Sandin* standard was 101 days." *Colon v. Howard*, 215 F.3d

---

3 While Kennedy sentenced Plaintiff to sixteen months of SHU time, Plaintiff was only required to serve twelve months.

227, 231 (2d. Cir. 2000) (citing *Sandin*, 515 U.S. at 484 (a prisoner punished after a disciplinary hearing has not thereby been deprived of a liberty interest unless the punishment imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.")). Defendants do not contest the amount of SHU time that Plaintiff received, nor do they argue that Plaintiff lacked a liberty interest. As such, the Court will assume that this requisite is satisfied.

## (2) Sufficiency of Evidence

Defendants' main argument is that the disciplinary decision was supported by "some evidence," *Sira*, 380 F.3d at 69, and was therefore not a violation of due process. The Court agrees that in making his determination, Kennedy relied on the testimony of four corrections officers and an inmate, as well as the "Inmate Misbehavior Report of C.O. D. Victor, the Unusual Incident Report, the Use of Force Reports, the memo of Sgt. Matias to Lt. Pollack dated 3/26/03, the memo of C.O. Orlowski to Superintendant Conway dated 3/26/03." (Hearing Testimony at 131.) There was nothing in the record indicating that any of this evidence was unreliable. Kennedy also stated his reasons for the decision as follows:

> Assaultive conduct directed towards staff presents a direct threat to the . . . safety and security of a correctional facility and will not be tolerated. Your Disciplinary History shows prior instances of violent and assaultive conduct, though apparently no Assaults on Staff. This disposition is intended to deter you from ever again acting in an assaultive manner towards staff and to deter any other inmates from acting in a similar manner.

(*Id.* at 132.) Taken together, this is sufficient to satisfy the evidentiary requirements of due process.

Plaintiff appears to argue that such a finding is contrary to the outcome of his Article 78 proceeding, which vacated the Tier III hearings and remanded the case for de novo review. This decision was based on the state court's finding that the transcript was confusing and incomplete, and consequently insufficient for judicial review. However, the state evidentiary standard in such cases is higher than the federal standard. *See Sira v. Morton*, 380 F.3d 57, 76 n.9 (2d Cir. 2004) ("New York law requires prison disciplinary rulings to be supported by sufficiently relevant and probative information to constitute substantial evidence. This requirement is stricter than the 'some evidence' standard necessary to afford due process.").

Additionally, in order to comply with constitutional due process standards, the only record of a disciplinary hearing that must be maintained is a written statement describing the evidence relied upon and the reasons for the determination. *Wolff*, 418 U.S. at 564-65; *see, e.g., Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 415 (W.D.N.Y. 2007) ("[L]ack of a transcript itself does not give rise to a constitutional violation."); *Hernandez v. Selsky*, No. 04-CV-0552, 2006 U.S. Dist. LEXIS 15480, at *3 (N.D.N.Y. Mar. 7, 2006) ("Plaintiff had no right under the 'Constitution and laws' to have a tape recording or transcript of his disciplinary hearing considered during his administrative appeal or his disciplinary conviction"); *Dixon v. Goord*, 224 F. Supp. 2d 739, 744 (S.D.N.Y. Oct. 23, 2002) ("While New York law requires that an electronic record of a disciplinary hearing be maintained . . . such a record is not constitutionally required . . . . It is the due process fairness of the hearing itself that is constitutionally significant."). Thus,

the due process clause merely requires a written statement explaining the grounds for the decision, based on some evidence in the record. *Dixon*, 224 F. Supp. 2d at 744.

The transcript here describes the evidence relied upon, as well as the reasoning for the determination. Moreover, the Court has found that Kennedy's decision was indeed based on "some evidence." Thus, although the decision may not have been in accordance with New York law, it was based on sufficient evidence to satisfy federal due process requirements.

**(3) Inadequate Employee Assistance**

In *Eng v. Coughlin*, 858 F.2d 889 (2d Cir. 1988), the Second Circuit held that "prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." 858 F.2d at 897. Under *Eng*, an assigned assistant who does nothing to assist an inmate "has failed to accord the prisoner his limited constitutional due process right of assistance." *Id.* at 898. However, an inmate's due process right to assistance is limited. *Jermosen v. Coughlin*, No. 89-CV-1140, 1993 U.S. Dist. LEXIS 11364, at *4 (W.D.N.Y. Aug. 9, 1993), *aff'd,* 29 F.3d 620 (1994) (where an employee assistant interviewed witnesses and reported to the inmate, nothing else was required of the assistant); *Fernandez v. Callens*, No. 06-CV-0506(Sr), 2010 U.S. Dist. LEXIS 115496, at *30-31 (W.D.N.Y. Oct. 29, 2010) (assistance held to be sufficient where inmate requested seven inmates as potential witnesses, the assistant was unable to locate one, three refused to testify, two were rejected by the hearing officer, and the assistant issued several documents to plaintiff upon his request.) .

12

Although here it is undisputed that he was assigned an employee assistant, Plaintiff contends that the employee assistant assigned to him failed to interview witnesses and failed to supply him with documents that would have assisted in his defense. The record before the Court indicates that Plaintiff met with the assistant, and that, along with requesting several documents, he asked that five inmates and four prison officials be called as witnesses. (Hearing Tr. at 2.) The employee assistant contacted the requested witnesses, obtained witness refusal forms from those who declined to participate, and additionally provided Plaintiff with several requested documents. (*Id.*) Furthermore, Kennedy called the employee assistant into the hearing to testify as to the assistance he gave. (*Id.* at 12-16.) Since the employee assistant did reach out to each of the requested witnesses, and did provide Plaintiff, where possible, with requested documents, the Court finds that his assistance did not fall short of the required level. Accordingly, Plaintiff's claim of inadequate employee assistance does not present a due process violation.

### (4) Unjust Denials of Requested Witnesses and Documentary Evidence

Chief among the minimal due process safeguards outlined in *Wolff* is "the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Thomas v. Calero,* No. 09-CV-5209(LTS)(MHD), 2011 U.S. Dist. LEXIS 42900, at *25 (S.D.N.Y. March 17, 2011) (citations omitted). This right, though, "is necessarily circumscribed by the penological need to provide swift discipline in individual cases," *Ponte*, 471 U.S. at 495, as well as the discretion to refuse to call witnesses when summoning them may create a risk of reprisal or undermine authority, *Wolff,* 418 U.S. at

13

566, and the ability to deny a prisoner's request to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991). A hearing officer is not required to explain in the record why a request was denied. *Ponte*, 471 U.S. at 496-97.

In this case, Plaintiff appears to be objecting to Kennedy's denial of his request, made on the last day of the hearing, to call Officers Corcoran, Jacobs, Cortright, Henry, Edwards, and Hinman as witnesses. (Hearing Tr. at 120-21.) Kennedy denied the request on the grounds that the request was unreasonable based upon timeliness and redundancy considerations. (*Id.* at 125.) While Plaintiff had allegedly mentioned two of the new witnesses in passing, the other four had never been brought up. (*Id.*) Kennedy had already heard from Officers Victor, Matias, Breton, and Pollack, as well as inmates Price and Roberts. (*Id.* at 122-23.) As such, the Court finds that Kennedy was within his discretion in refusing to call the new witnesses, and accordingly, Plaintiff's claim does not rise to the level of a due process violation.

Plaintiff also appears to be objecting to Kennedy's denials of his requests for various documents. However, the Court finds that Kennedy, having explained his reasoning, was acting within his discretion as a hearing officer in denying Plaintiff's requests.

As for Plaintiff's allegations that he was denied the right to confront witnesses, "it is well settled that an inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings." *Fernandez v. Callens*, No. 06-CV-0506(Sr), 2010 U.S. Dist. LEXIS 115496 (W.D.N.Y. Oct. 29, 2010) (citations

14

omitted). Accordingly, Plaintiff's objections in this regard do not pose a due process violation.

### (5) Denial of an Impartial Hearing Officer

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). This standard is satisfied by a hearing officer who does not "prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990). However, "hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen*, 100 F.3d at 259. A hearing officer may satisfy the standard of impartiality if there is "some evidence" in the record to support his findings. *Hill*, 472 U.S. at 455.

It is unclear on what grounds Plaintiff bases his claim that Kennedy was not impartial. The record does not appear to support such allegations. The disciplinary hearing spanned several weeks to allow witnesses to be interviewed and testify. In addition to Plaintiff's inmate witnesses, five prison officials also provided testimony, and Kennedy permitted Plaintiff to specify the questions to be asked. As reflected in the hearing transcript, Kennedy also permitted Plaintiff to voice his objections during the hearing, and afforded Plaintiff the opportunity to testify and to present evidence in his defense. Moreover, Kennedy set forth sufficient evidence to support his determination of guilt. As such, Plaintiff's bare allegation of bias does not present a due process violation.

**(6) Claims against Defendant Murray**

As indicated above, Plaintiff appears to aver that Defendant Murray, by refusing to reverse Kennedy's determination against Plaintiff, deprived Plaintiff of his due process rights. As stated earlier, there is nothing in the record to support the conclusion that Kennedy denied Plaintiff his due process rights at the Tier III disciplinary hearing. Murray's decision affirming the hearing officer's determination does not, standing alone, establish a federal constitutional violation. *See Eleby v. Selsky*, 682 F.Supp.2d 289, 293 (W.D.N.Y. 2010) ("Thus, plaintiff cannot show that his constitutional rights were violated during the disciplinary proceedings or hearing. Selsky's affirmance of the hearing officer's decision therefore cannot give rise to a § 1983 claim."). Accordingly, Plaintiff's claim against Murray does not rise to the level of a due process violation.

**B. Cruel and Unusual Punishment Claim**

As indicated above, Plaintiff also alleges that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by causing him to sleep on a bent bed frame with an unsupportive mattress, aggravating his preexisting back injury. "An official violates the Eighth Amendment prohibition against cruel and unusual punishment when two requirements are met." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). First, the alleged punishment must be found to be "'objectively, sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'Under the objective standard, conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.'" *Boddie,* 105 F.3d at 861 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Second, the prison official involved

16

must have a 'sufficiently culpable state of mind.'" *Boddie*, 105 F.3d at 861 (quoting *Farmer*, 511 U.S. at 834).

On the objective issue, not every deprivation is "sufficiently serious" to reach constitutional dimensions. *Farmer,* 511 U.S. at 834. "The Constitution . . . does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities" will qualify as sufficiently serious. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). A claim must be based on "extreme deprivations," that are "repugnant to the conscience of mankind," not simply on conditions that are merely unpleasant or annoying to the inmate. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1982) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Sostre v. McGinnis,* 442 F.2d 178, 191 (2d Cir. 1971). Prison conditions that result in the "unnecessary and wanton" infliction of pain, and are "totally without penological justification," are unconstitutional. *Rhodes,* 452 U .S. at 346.

With regard to the subjective component of the test, a plaintiff must prove that the defendants were deliberately indifferent to the prisoner's needs. Deliberate indifference is shown if the claims indicate that the officials "kn[ew] of and disregarded an excessive risk to inmate health or safety."   *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert denied*, 515 U.S. 1154 (1995). "The official must both be aware of the facts from which the inference could be drawn that the substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834. Mere negligence is not enough to support a claim under 42 U.S.C. § 1983; the conduct in question must be a "barbarous act that shocks the conscience." *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, (2d Cir.

17

1970) (internal quotation and citation omitted). There must be, as a threshold matter, "allegations of a conscious or callous indifference to a prisoner's rights." *Webb v. Jackson*, No. 92 Civ. 2149 (SS), 1994 U.S. Dist. LEXIS 3008, at *6-7 (S.D.N.Y. Mar. 11, 1994) (citation omitted).

The record here indicates that Plaintiff filed grievances and complained about his bed aggravating his back injury. Subsequently, it appears that prison officials checked the bed and told Plaintiff that it was fine. Plaintiff was advised to discuss the issue with medical staff. These facts are uncontested, and do not suggest cruel and unusual punishment, even when considered under the less stringent pro se standard. In fact, Plaintiff has only alleged the following:

> A. Every night I've got to wake up like (indicating). It's hurting my back, aggravating my preexisting - -
>
> Q. So your main claim here is that - -
>
> A. That's cruel and unusual punishment.
>
> Q. That's the legal term for it. But factually, what you are trying to say to support that claim is that your bed was caved in and your mattress was lumpy and itchy?
>
> A. Right. Because the stuff was coming out.
>
> Q. And that's the extent of it?
>
> A. And I let them know and every single officer and prison official that [I came in contact with.]
>
> . . .
>
> A. The grievance system is atrocious. Everything I do - - I've got no problem writing. I'm in my cell, bored. I'm going to write every day.

(Pl. Dep. Tr. at 100.) Nothing in the record indicates that Plaintiff was subjected to "extreme deprivation." Additionally, Defendants' actions, in referring Plaintiff to medical staff, appear to have been reasonable, and do not evidence any deliberate indifference. As such, Plaintiff's allegations of cruel and unusual punishment do not satisfy the requirements of an Eighth Amendment Violation, and are dismissed.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. No. 69) is granted, and Plaintiffs claims (3) and (4) are dismissed. Accordingly, Defendants Kennedy and Murphy are dismissed, since there are no remaining claims against them.

IT IS SO ORDERED.

Dated:   September 13, 2011
         Rochester, New York

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge